AO 472 (Rev. 3/86) Order of Detention Pending Trial
======================================================================

# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 07-95-P-S** |
| | ) | |
| **CURTIS MOORE,** | ) | |
|               **Defendant** | ) | |

## ORDER OF DETENTION PENDING TRIAL

In accordance with the Bail Reform Act, 18 U.S.C., Section 3142(f), a detention hearing has been held. I conclude that the following facts require the detention of the defendant pending trial in this case.

### Part I - Findings of Fact

[ ]  (1)  The defendant is charged with an offense described in 18 U.S.C. Section 3142(f)(1) and has been convicted of a (federal offense)(state of local offense that would have been a federal offense if a circumstance giving rise to federal jurisdiction had existed) that is

    [ ] a crime of violence as defined in 18 U.S.C. Section 3156(a)(4).
    [ ] an offense for which the maximum sentence is life imprisonment or death.
    [ ] an offense for which the maximum term of imprisonment of ten years or more is prescribed in _____.
    [ ] a felony that was committed after the defendant had been convicted of two or more prior federal offenses described in 18 U.S.C. Section 3142(f)(1)(A)-(C), or comparable state or local offenses.

[ ]  (2)  The offense described in finding (1) was committed while the defendant was on release pending trial for a federal, state or local offense.

[ ]  (3)  A period of not more than five years has elapsed since the (date of conviction)(release of the defendant from imprisonment) for the offense described in finding (1).

[ ]  (4)  Findings Nos. (1)(2) and (3) establish a rebuttable presumption that no condition or combination or combinations of conditions will reasonably assure the safety of (an) other person(s) and the community. I further find that the defendant has not rebutted this presumption.

**Alternate Findings (A)**

[X] (1) There is probable cause to believe that the defendant has committed an offense
      [X] for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act.
      [ ] under 18 U.S.C. Section 924(c).

[ ] (2) The defendant has not rebutted the presumption established by finding 1 that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community.

**Alternate Findings (B)**

[X] (1) There is a serious risk that the defendant will not appear.
[X] (2) There is a serious risk that the defendant will endanger the safety of another person or the community.

### Part II - Written Statement of Reasons for Detention

The defendant is charged by indictment with conspiracy to distribute and possess with intent to distribute a mixture or substance containing cocaine and 50 grams or more of a mixture or substance containing cocaine base, also known as crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2. The indictment also alleges that the penalty provisions of 21 U.S.C. § 841(b)(1)(A) apply. The defendant is thus exposed to a mandatory minimum term of imprisonment of 10 years and a maximum term of life. The government has invoked the presumption contained in 18 U.S.C. § 3142(e) and seeks to have the defendant detained both as a risk of flight and a danger to the community.

At the detention hearing, the defendant presented the testimony of his girlfriend, Dolly Kellogg, who testified, *inter alia*, that she and the defendant have been living together since May 2005; that they have a 9 month-old child together who lives with them in North Providence, Rhode Island along with Ms. Kellogg's child from a previous relationship and Ms. Kellogg's late sister's two children; that she and the defendant plan to marry later this month; that since July 2007 the defendant has been on pretrial release in Rhode Island on a federal felon-in-possession firearm charge pending in the District of Connecticut; that, in connection with that pretrial release, the defendant has consistently been on electronic monitoring, has reported once a week, as required, to his pretrial services officer, has called in daily for drug-testing instructions, has passed all drug tests since the initial two screens collected on July 30 and August 3, 2007 tested positive for cocaine and has otherwise fully complied with all conditions of release; that he was recently employed for approximately one month by a telephone company in a sales capacity until he was fired for attending the funeral of the mother of his other two children who live in Delaware (even though he had permission of his pretrial services officer to attend the funeral); that the defendant is a good family man and is very helpful around the house caring for the children and assisting her in certain household chores she has difficulty performing since her back and neck were injured in an automobile accident on October 11, 2007; that the defendant is close to his mother, who lives in Connecticut;[1] and that, in her opinion, the defendant would never flee or use drugs. On cross-

---

[1] The defendant, by contrast, reported during his pretrial services interview that he has only sporadic contact with his mother.

examination Ms. Kellogg acknowledged that she was living with the defendant when the Connecticut weapons offense allegedly occurred and during the entire period of the conspiracy alleged in the instant Indictment; testified that, aside from his brief recent employment as a sales representative, the defendant had been unemployed "for quite some time;" gave inconsistent and contradictory testimony regarding her knowledge and the fact of the defendant's history of drug use; denied she knows any of the defendant's alleged co-conspirators; and, when asked more specific questions regarding her personal participation in making a drug delivery in her own automobile with alleged co-conspirator Samantha Lamadeleine, invoked her Fifth Amendment right against self-incrimination.

U.S. Probation Officer Daniel Kelly testified as a government rebuttal witness. He acknowledged that since the defendant's first two positive screens for cocaine, he has tested negative for drug use during the period of his pretrial release supervision in Rhode Island on the pending Connecticut weapons charge, but stated that in reporting for drug testing the defendant has been obnoxious and belligerent. He also testified that in his opinion the defendant was not truthful during his pretrial interview when he denied using cocaine for a ten year period before his arrest on the instant charge in light of his two positive screens for cocaine on July 30 and August 3, 2007. He also explained that the defendant's referenced employment lasted all of two weeks and that he had no known source of income.

As the government concedes, the defendant has rebutted the presumption contained in 18 U.S.C. § 3142(e) as it relates both to risk of flight and danger to the safety of the community. The effect of the rebuttal is to relieve the defendant of the burden of production. *United States v. Jessup*, 757 F.2d 378, 386 (1st Cir. 1985). Despite the rebuttal, I am nevertheless required to keep in mind the fact that Congress has found that "flight to avoid prosecution is particularly high among persons charged with major drug offenses." S. Rep. No. 225, 98th Cong., 1st Sess. 20 (1983); *Jessup* at 384. The legislative history also reveals that, in establishing the statutory presumption that "no condition or combination of conditions will reasonably assure . . . the safety of the community . . .," 18 U.S.C. § 3142(e), Congress specifically had in mind defendants alleged to be involved in drug trafficking: "The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'" S. Rep., *supra* at 13. The statutory presumption was created partly because of concern for a high degree of pretrial recidivism. *Id*. at 20. *Jessup* teaches that the presumption not only imposes a burden on the defendant to come forward with evidence to rebut this danger, but also requires the court in assessing any such evidence to pay heed to the congressional concerns.

The defendant is charged in this court with participation in a serious drug trafficking conspiracy that exposes him to a mandatory minimum sentence of ten years. He was arrested on this charge on October 26, 2007, some three months after his arrest in July in Rhode Island on the pending Connecticut weapons charge. Despite Ms. Kellogg's inconsistent and contradictory testimony regarding the defendant's history of drug use in which she sometimes denied that he used either cocaine or marijuana, the defendant conceded during his pretrial services interview, held on October 26, 2007, that from his teenage years to the present he has used marijuana on a nearly daily basis. His denial during that interview of any use of cocaine or crack cocaine during the last ten years is undermined by the two positive screens noted above at the time of his arrest on the Connecticut charge a few months ago. Aside from his recent brief two-week to one-month job, this

30 year-old defendant could not recall any prior employment history.  The defendant's criminal history includes convictions for possession of marijuana and carrying a concealed weapon.

In the circumstances, where the defendant is charged with a serious drug trafficking offense, has a lengthy history of drug use,[2] and has no identified source of income, the defendant very much fits the paradigm on which the rebuttable presumption is based.  Any conditions of release would have to include reliable third-party supervision.  I do not find that the defendant's proposal satisfies that requirement.  First, as I indicated in open court, I do not find Ms. Kellogg an appropriate third-party custodian, that is, one who could be relied upon to supervise the defendant's compliance with all conditions of release, to use every effort to assure his appearance as required and to notify the court immediately in the event he violates any conditions of release or disappears.  I find her not credible based on her contradictory and inconsistent testimony.  I also find that she is motivated by an overriding desire that the defendant be maintained on release so that he can continue to assist her with child care and household responsibilities.  No one else was presented to the court as a potential suitable third-party custodian.  Electronic monitoring alone will not provide the required level of assurance that the defendant will not flee and that the community will be protected from his continuing drug trafficking.

Taking into consideration the congressional concerns that underlie the statutory presumption, including drug trafficking recidivism, as well as all of the available information concerning the factors listed in 18 U.S.C. § 3142(g), I find by a fair preponderance of the evidence that the defendant poses a serious flight risk and that there are no available conditions of release that will reasonably assure his appearance as required.  I also find, by clear and convincing evidence, that the defendant poses a danger to the safety of the community and that there are no conditions that will reasonably assure community safety  I therefore ***ORDER*** that the defendant be detained pending trial.

## Part III - Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extend possible, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

Dated: November 6, 2007.

/s/ David M. Cohen
David M. Cohen
U.S. Magistrate Judge

---

[2] The fact that the defendant's supervised drug tests have all been clean since August 3, 2007, while a positive development, is of short-term consequence and does not erase his drug-use history.